*252 ATTORNEY DISCIPLINARY PROCEEDING
PER CURIAM
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Trisha Ann Ward, an attorney licensed to practice law in Louisiana but *253 currently on interim suspension pursuant to a joint motion of the parties filed in November 2016. In re: Ward, 16-2003 (La. 12/1/16), 207 So.3d 397.
UNDERLYING FACTS

Counts I, II & III-The Unauthorized Entry Matter

On December 28, 2013, respondent intentionally entered the home of S.S. and his wife, J.H., without authorization.[1] During her sworn statement to the ODC, respondent acknowledged that she did not have express permission to enter the residence. Respondent was arrested and charged with unauthorized entry of an inhabited dwelling, a felony. This charge was dropped as part of a plea bargain. On October 30, 2015, respondént pleaded guilty to stalking and to violation of a protective order, both misdemeanors. The ODC alleged that respondent’s conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) 12(commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.

Count IV-The Credit Card Matter

In August 2014, respondent used J.H.’s credit card number to make purchases on Amazon.com. The ODC alleged that respondent’s conduct violated Rules 8.4(a), 8.4(b), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
In February 2016, the ODC filed four counts of formal charges against respondent. Respondent answered the formal charges and generally denied the factual allegations as written. Respondent acknowledged that she did not have the express authority of J.H. to enter the residence, but stated that she had been given the implied authority to do so. Respondent added that J.H. provided her with the credit card at issue, gave her the authority to use the card at will, and never expressly revoked authorization to use the card. She indicated that the charges made to the card in August 2014 were accidental.

Formal Hearing

The hearing committee conducted a hearing in October 2016. The ODC introduced documentary evidence and called J.H., S.S., and Adonica Nelson (witness to the unauthorized entry incident) to testify. Respondent called Sergeant Francis Jar-rott (unauthorized entry matter), Detective Michael DiMarco (credit card matter), attorney Andrew Duffy (supervisor at the Orleans Parish Public Defender’s Office), and Phyllis Shnaider (clinical social worker) to testify. The transcript of the latestimony of Dr. Charles Billings (psychiatrist) was also accepted into evidence. Respondent testified bn her own behalf and on cross-examination by the ODC.[2]

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:
*254 Respondent was hired by S.S. in the Orleans Parish Public Defender’s Office in' 2008. She subsequently became friends with his wife (J.H.) and would occasionally babysit the children and house-sit for the family. The friendship between respondent and J.H. developed over the years and became romantic.
In October 2013, J.H. decided to end the relationship and so communicated that to respondent via e-mail on October 28th. The next day, respondent repeatedly tried to communicate with J.H., without success. That evening, respondent e-mailed J.H. that she was coming over to her house to see if she was alright. J.H. e-mailed respondent back and told her not to come over. Under the influence of alcohol, respondent. went to J.H.’s home and while outside, cursed and called J.H.’s name repeatedly. Respondent let herself inside via a magnetic key to the gate in the fence surrounding the home. .She had been entrusted with this key due to the relationship and the services she performed for the family. Eventually, respondent let herself in the house through a door she knew was kept unlocked. She was subsequently ejected by S.S. The accounts of that ejection differ. Nonetheless, both respondent and S.S. called 911, and the police came.
Despite this incident, respondent continued to .communicate with J.H. J.H. emailed her that the relationship between them was over and requested that she stop trying to communicate with her and get on with her life. In mid-November, I respondent again attempted to' communicate with J.H. via e-mail and was told in reply to stop. Respondent continued to email J.H. and later confessed to having inadvertently used J.H.’s credit card number on her Amazon account. Respondent apologized and promised to delete the card information from the account. However, several months later, she ordered some merchandise for herself using the same credit card number. Respondent claimed this was an accident.
In December 2013, J.H., S.S., and their children were visiting J.H.’s family in New York. Respondent knew they would be out of town. On December 28th, respondent used the aforementioned key she had to the family’s gate and gained access to the. residence through a door she knew was unlocked. Respondent subsequently claimed she was there to leave $2,500 which she had owed to J.H. Respondent was met by Adoniea Nelson, the fiancée of the family’s house sitter. When confronted by Ms. Nelson, respondent pretended to be in the wrong house. A criminal complaint was filed after the family returned and was informed of the home intrusion. The couple then obtained stay-away orders directed at respondent.
In November 2014, J.H. discovered that three purchases totaling $96.65 were made on her credit card. J.H. learned that respondent had made them using the credit card number that respondent had promised to remove from her Amazon account. A criminal complaint was then filed against respondent.
Based on these findings, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal 'charges. Additionally, the committee found the following:
Respondent acknowledged that on De-cembér 28, 2013, she intentionally entered the home of J.H. and S.S. without permission. Considering J.H.’s e-mails specifically telling respondent to stay away and cease contact, respondent did not have implied consent to enter the home. The alibi about wanting to leave money at the' house is difficult to believe based on respondent’s lack of credibility and the fact Rthat there were easier ways to give J.H. the money. Respondent acknowledged the act was ir~ *255 rational and that her goal could have been accomplished by other means.
The charge of unauthorized use of a credit card was nolle prosequied, but respondent had no authority, express or implied, to use J.H.’s credit card to make purchases. Respondent admitted to “accidentally” using the card and lying about taking it off of her Amazon account. The card should have been taken off of the account after the breakup. Respondent was the first to notice it and informed J.H. However, she then again made a $96.65 purchase using the card. One time is an accident; however, respondent’s motive becomes suspicious under the circumstances related to the second incident. Considering her lack of credibility and continued attempts to make contact with J.H., one can infer the requisite intent to support the charge of unauthorized use.
The committee determined respondent violated duties owed to the public and acted negligently, knowingly, and intentionally. Respondent’s misconduct caused consternation to J.H. and had the potential of interfering with the efforts of J.H. and S.S. to save their marriage.
In aggravation, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and illegal conduct. In mitigation, the committee found the absence of a prior disciplinary record. The committee acknowledged the factors of “[mjental disability or émotional problems” but did not give these factors much weight as respondent’s therapist, Ms. Shnaider, did not attribute the behavior to her mental condition, and respondent’s psychiatrist, Dr. Billings, did not uncover any evidence that the behavior was related to mental illness,
After further considering -this court’s prior jurisprudence addressing similar misconduct, a majority of the committee recommended respondent be suspended I «from the practice of law for two years.[3] One committee member dissented and would recommend that respondent be suspended from the practice of law for one year, fully deferred, subject to a period of probation conditioned on respondent being monitored by, an experienced attorney and continuing treatment for her emotional issues.
The ODC filed a notice of no objection to the hearing committee’s report. In her brief filed with the disciplinary board, respondent objected to certain conclusions by the hearing committee.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the factual findings of the hearing committee are not'manifestly erroneous. Several findings by the majority of the committee are dependent upon, credibility determinations. The court will defer to such credibility determinations unless they are clearly wrong. Although the dissenting member came to a contradictory conclusion on some determinations, there is nothing in the record that indicates the credibility determinations of majority are manifestly erroneous. Particularly, the majority found respondent not to be credible, which, influenced its findings regarding Counts I and IV.
With regard to Count I, respondent argued that she had implied authority to enter J.H.’s home on December 28, 2013. Her lack of credibility, when viewed in light of the other evidence in the record, clearly demonstrates that she did not have implied authority. Any contrary assumption on her part was unreasonable.
*256 As to Count IV, respondent argued that she mistakenly used J.H.’s credit card to make online purchases in August 2014. While her explanation may be reasonable, |7the majority did not find her explanation credible. This finding does not appear to be manifestly erroneous.
The board determined the committee correctly applied the Rules of Professional Conduct. Respondent knowingly violated a duty to the public by engaging in criminal conduct on multiple occasions. She caused actual harm to J.H. and S.S. in the form of frustration and fear. She caused nominal financial harm by her unauthorized use of J.H.’s credit card. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is suspension.
In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and illegal conduct. In mitigation, the board found the absence of a prior disciplinary record, personal and emotional problems, and the imposition of other penalties or sanctions.
After reviewing prior jurisprudence involving similar misconduct, and considering the mitigating factors, the board recommended respondent be suspended from the practice of law for one year and one day, retroactive to December 1, 2016, the date of her interim suspension. The board further recommended that respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this, court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and 1 ^recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La. 3/11/94), 633 So.2d 150.
In this matter, the record supports a finding that respondent engaged in misconduct stemming from her disengagement from a personal relationship. The record also supports a finding that respondent violated Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct. We agree with the findings of the hearing committee and the disciplinary board, with one exception:
Regarding the matter involving respondent’s use of J.H.’s credit card, respondent testified that she used the card in August 2014 by mistake. Although a majority of the hearing committee did not accept her explanation for the mistake, which the disciplinary board admitted was reasonable, no evidence was offered to contradict respondent’s testimony. More important, however, is that the formal charge specifically alleged that respondent “was never given permission to use the credit card at issue.” This was simply not the case. J.H. testified that she had assisted respondent financially on several occasions and even provided respondent with the numbers to the credit card so that respondent could make a purchase using the card. Considering that the specific allegation was directly contradicted by the evidence, including the testimony of J.H., we would be remiss in saying that the ODC *257 has proven a violation of Rule 8.4(c) by clear and convincing evidence.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and lathe seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984).
The prior jurisprudence of this court suggests that the board’s recommended sanction is within the range of appropriate sanctions for respondent’s misconduct. Most recently, in In re: Fusilier, 16-0016 (La. 5/27/16), 193 So.3d 1150, we suspended an attorney for eighteen months after she had burglarized the home of her ex-husband, stealing a diamond ring and watch which she then pawned for money to gamble. In In re: Katner, 08-2398 (La. 2/6/09), 15 So.3d 52, we suspended an attorney for one year and one day after she pleaded guilty to stalking and harassing an individual via telephone, later had her related criminal probation revoked, and pleaded guilty to DWI. Finally, in In re: Robinson, 01-2772 (La. 5/14/02), 819 So.2d 280, we suspended an attorney for one year, with eleven months deferred, followed by one year of probation with the condition that the attorney seek an evaluation and treatment from a mental health care provider, after the attorney stalked her dentist, violated injunctions prohibiting her from contacting her dentist, and was held in contempt of court for those violations.
The board’s recommended sanction is reasonable under the circumstances. Accordingly, we will adopt the recommendation and impose a one year and one day suspension from the practice of law, retroactive to the date of respondent’s interim suspension.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Trisha Ann ■Ward, Louisiana Bar Roll number 31485, be and she hereby is suspended from the practice of law for one year and one day, retroactive to December 1, 2016, the date Imof her interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Prior to the hearing in this matter, the ODC filed a motion seeking a protective' order pursuant to Supreme Court Rule XIX, § 16(D) to "protect the identity of the victims arising from the Respondent’s misconduct and under circumstances that are sensitive, highly personal, and injurious. The.hearing committee chair granted the motion. Accordingly, throughout this opinion, we have referred to the victims by their initials.

. After the hearing, respondent attempted to submit exhibits into the record by delivering them to the law office of the committee chair, but the admission of the exhibits was denied.

. The majority also recommended that as a condition of reinstatement, respondent be required to show that she has satisfactorily addressed her emotional and mental problems.